IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM HOWARD THOMAS, | § | |
| TDCJ No. 2033307, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:18-cv-3155-B-BN |
| | § | |
| LORIE DAVIS, Director | § | (Consolidated with: |
| Texas Department of Criminal Justice | § | No. 3:19-cv-88-B-BN) |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner William Howard Thomas, a Texas prisoner, has filed *pro se* applications for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his Dallas County conviction for second-degree aggravated assault with a deadly weapon and his Collin County convictions for first-degree aggravated robbery. *See* Dkt. Nos. 3, 4, & 10. His consolidated habeas actions are now referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Jane J. Boyle.

The State has answered, asserting that the habeas challenge to the Dallas County conviction should be dismissed as time barred and that the challenges to the Collin County convictions should be dismissed as time barred or, alternatively, as unexhausted. *See* Dkt. No. 17. Thomas failed to file a reply. And the deadline by which to do so has expired. *See* Dkt. Nos. 11 & 15; *see also* Dkt. No. 22.

The undersigned enters these findings of fact, conclusions of law, and

recommendation that, as to the Dallas County conviction, the Court should dismiss the habeas applications with prejudice as time barred and, as to the Collin County convictions, the Court should dismiss the applications without prejudice for Thomas's failure to exhaust state court remedies in a procedurally correct manner prior to filing a Section 2254 application.

## Applicable Background

The State set out this background information in its answer, which Thomas has not contested:

Thomas challenges the Director's custody of him pursuant to the judgment and sentence of the 1st Criminal District Court of Dallas County, Texas, in cause number F-1361815-H, and pursuant to the judgments and sentences of the 416th Judicial District Court of Collin County, in cause numbers 416-80032-2015 and 416-80033-2015. Exhibit A at 2-5; Exhibit B at 2-5. In cause number 416-80032-2015, Thomas was charged by indictment with first-degree aggravated robbery, and in cause number 416-80033-2015, he was charged by indictment with two more counts of first-degree aggravated robbery. Exhibit A at 1; Exhibit B at 1. On November 4, 2015, the 416th Judicial District Court of Collin County accepted Thomas's guilty plea in both cause numbers and sentenced him to twelve years' imprisonment for both criminal cases, all to run concurrently. Exhibit A at 2-5; Exhibit B at 2-5.

In cause number F-1361815-H, Thomas was charged by indictment with second-degree aggravated assault with a deadly weapon, namely a shotgun. On March 3, 2016, Thomas entered into plea agreement wherein he would plead guilty to receive a ten-year sentence, and, on the same day, the 1st Criminal District Court of Dallas County accepted the guilty plea and agreed to sentence him to ten years' imprisonment.

Pursuant to his plea bargains, Thomas waived his right to appeal for these convictions from Dallas County and Collin County. Exhibit A at 9, 11; Exhibit B at 9, 11; Exhibit C at 3; Exhibit D at 3. However, Thomas signed a state application for writ of habeas corpus challenging his Dallas County conviction on November 27, 2017, which was file-stamped by the trial court on December 4, 2017. The Texas Court of Criminal Appeals (["CCA"]) denied Thomas's application without written order on August 15, 2018. Thomas signed another state

- 2 -

application for writ of habeas corpus challenging the denial of his pre-sentence time credit for his Dallas County conviction on May 26, 2018, which was file-stamped by the trial court on June 6, 2018. This second state habeas application was dismissed by the [CCA] as Thomas's request for pre-sentence time credit was not properly filed through a state habeas application.

Thomas signed two state habeas applications for writ of habeas corpus challenging his Collin County convictions on October 5, 2018, which were file-stamped on February 21, 2019. Exhibit C at 1, 17; Exhibit D at 1, 17. The [CCA] has not yet received nor ruled on these habeas applications. Exhibit E.

Thomas claimed he placed his federal petition under Civil Action No. 3:18-cv-3155, which challenged his Dallas County conviction, in the TDCJ mail system on August 28, 2018, and he appeared to mail his federal petition under Civil Action No. 3:19-cv-00088 on January 7, 2019, which included challenges to his convictions for both Dallas County and Collin County. [Dkt.] No. 3 (3:18-cv-3155) at 10; [Dkt.] No. 3 (3:19-CV-0088-B) at 36-46 (challenges to the Collin County convictions), 49 (envelope).

Dkt. No. 17 at 3-6 (citations and footnotes omitted).

## Legal Standards and Analysis

I.    Dallas County Conviction (Limitations)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for federal habeas proceedings brought under 28 U.S.C. § 2254. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. 104-132, 110 Stat. 1214 (1996). The limitations period runs from the latest of:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially

recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2).

The one-year limitations period is also subject to equitable tolling – "a discretionary doctrine that turns on the facts and circumstances of a particular case," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and only applies in "rare and exceptional circumstances," *United States v. Riggs,* 314 F.3d 796, 800 n.9 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

Taking the second prong first, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009) (per curiam) (citation omitted). This "prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [the litigant's] control." *Menominee Indian Tribe*, 136 S.

- 4 -

Ct. at 756 (emphasis in original).[1]

But "'[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.' What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) (quoting *Holland*, 560 U.S. at 653; footnote omitted).

A showing of "actual innocence" can also overcome AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

That is, the new, reliable evidence must be sufficient to persuade the Court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329).[2]

---

[1] *See, e.g., Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citing *Menominee Indian Tribe*, 136 S. Ct. at 756-57)).

[2] *See also Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted)); *Acker v. Davis*, 693 F. App'x 384, 392-93

A conviction becomes final under the AEDPA "when there is no more 'availability of direct appeal to the state courts.'" *Frosch v. Thaler*, No. 2:12-cv-231, 2013 WL 271423, at *1 (N.D. Tex. Jan. 3, 2013) (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009)), *rec. adopted*, 2013 WL 271446 (N.D. Tex. Jan. 24, 2013).

Applicable here, because Thomas did not file a direct appeal, his Dallas County conviction and sentence, imposed on March 3, 2016, became final for limitations purposes 30 days later – or on Monday, April 4, 2016. *See* TEX. R. APP. P. 26.2(a)(1); TEX. R. APP. P. 4.1(a). And, "[b]ecause [Thomas's] state habeas petition" – filed no sooner than November 27, 2017, the day that he signed it – "was not filed within the one-year period" that commenced on April 4, 2016, that petition "did not statutorily toll the limitation clock." *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013) (citing *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (in turn citing 28 U.S.C. § 2244(d)(2))); *see Ex parte Thomas*, W13-61815-H(A) (Crim. Dist. Ct. No. 1, Dallas Cnty., Tex.).

Accordingly, the Section 2254 habeas application – filed no sooner than August

---

(5th Cir 2017) (per curiam) ("Successful gateway claims of actual innocence are 'extremely rare,' and relief is available only in the 'extraordinary case' where there was 'manifest injustice.' *Schlup*, 513 U.S. at 324, 327. When considering a gateway claim of actual innocence, the district court must consider all of the evidence, 'old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.' *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citations omitted). 'Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do."' *Id.* (quoting *Schlup*, 513 U.S. at 329). 'The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.' *Id.*" (citations modified)).

28, 2018, the date on which Thomas certifies that he placed it in the prison mailing system,[3] *see* Dkt. No. 3 at 10 – was filed more than 500 days too late.

The applications as to the Dallas County judgment are therefore due to be denied as untimely absent statutory or equitable tolling of the limitations period or establishment of actual innocence. And Thomas asserts that, "[d]ue to ineffectiveness of my counsel I did not receive any of my transcripts or discovery until a [year] and a half after my conviction. I had to go through the grievance process with the state bar of Texas, so therefore I could not provide the facts pertaining to my conviction." Dkt. No. 3 at 19.

First, to the extent that these assertions could be construed as arguing that timeliness should be considered under Section 2244(d)(1)(D), the factual predicate provision of the statute of limitations, that provision runs from "the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)).[4] It therefore does not matter when Thomas obtained his client file. It matters

---

[3] *See* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

[4] *See also Hunter v. Cain*, 478 F. App'x 852, 853 (5th Cir. 2012) (per curiam) ("[Petitioner] argues, pursuant to § 2244(d)(1)(D), that the limitations period should have commenced on February 17, 2009, when he received the DA's case file after his attorney-client relationship with Pulliam ended.... [But he] has not shown why he could not have discovered the report through the exercise of due diligence once it

when he first knew of – or, through due diligence, could have discovered – "the vital or principal facts underlying [the] claims" supported by that file. *Vega v. Stephens*, No. 3:14-cv-551-P-BK, 2015 WL 4459262, at *3 (N.D. Tex. July 20, 2015) (defining "the factual predicate" as "the vital or principal facts underlying [a petitioner's] claims" (citing *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007); *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012))); *see Blackman v. Stephens*, No. 3:13-cv-2073-P-BN, 2016 WL 777695, at *5 (N.D. Tex. Jan. 19, 2016) ("Under Section 2244(d)(1)(D), the applicable date is the date on which vital facts are first discovered, not when evidence to support those facts is first acquired."), *rec. accepted*, 2016 WL 759564 (N.D. Tex. Feb. 26, 2016).

Thomas fails to explain when those facts could have been discovered through

---

was disclosed to Pulliam. The district court correctly determined that Hunter's § 2254 application was untimely."); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) ("[I]t is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." (citing *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001) (citing, in turn, *Flanagan*, 154 F.3d at 198-99))); *Ballay v. Louisiana*, Civ. A. No. 06-10699, 2007 WL 4413990, at *6 (E.D. La. Dec. 13, 2007) (factual predicate of *Brady* claim "that the prosecution withheld a statement [witness gave to the sheriff's office] in which she allegedly made comments inconsistent with her trial testimony" was first "known by defense counsel at the time of trial, in that he asked for the statement to be produced"); *Toney v. Quarterman*, Civ. A. No. H-09-0083, 2009 WL 2356104, at *6-*7 (S.D. Tex. July 27, 2009) ("Unlike the petitioner in *Starns*[ *v. Andrews*, 524 F.3d 612 (5th Cir. 2008)], who was not aware of the existence of a material witness until that witness was deposed in the civil trial, Toney was fully aware at the time of his trial that a blood sample was taken from him," the factual predicate for his habeas claim. "Merely alleging new evidence to support facts that were known at an earlier date does not suffice to establish a new factual predicate." (internal citation omitted)).

due diligence.

Thomas's assertions further show neither an extraordinary circumstance nor the due diligence to support a claim of equitable tolling. While "complete attorney abandonment can qualify as an extraordinary circumstance for equitable tolling purposes," *Manning v. Epps*, 688 F.3d 177, 184 n.2 (5th Cir. 2012) (citing *Maples v. Thomas*, 565 U.S. 266, 281-82 (2012)), Thomas has not alleged that his counsel abandoned him. And, to the extent that his assertions may be construed as asserting that his counsel erred or was negligent, "mere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified." *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002).

Accordingly, as to his Dallas County conviction, Thomas's habeas applications should be dismissed with prejudice as time barred.

II.    Collin County Convictions (Exhaustion)

Turning to the Collin County convictions, the State argues that this Court should either dismiss Thomas's Section 2254 petition as time barred (with prejudice) or as unexhausted (without prejudice).

First, although these state criminal judgments were imposed outside this district, Thomas was incarcerated in the Texas Department of Criminal Justice's ("TDCJ") T.L. Roach Unit when he filed his federal habeas action. *See* Dkt. No. 3 at 10. TDCJ's Roach Unit is located in Childress County, within the Amarillo Division of this district, *see* 28 U.S.C. § 124(a)(5), so this Court has jurisdiction to consider habeas claims directed at these convictions, *see* 28 U.S.C. § 2241(d) ("Where an

application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application."); *see also Carmona v. Andrews*, 357 F.3d 535, 537 (5th Cir. 2004) ("Section 2254 'confers jurisdiction upon the federal courts to hear collateral attacks on state court judgments.' 'Section 2241 "specifies the court in which [the petition] must be brought."' The 'respective jurisdictions' language presumably limits the general habeas power contained in § 2254." (citations and footnote omitted)).

But, as the State explained, when Thomas filed his Section 2254 action, the CCA had not yet received nor ruled on his state habeas applications concerning the Collin County convictions. *See* Dkt. No. 17, Ex. C at 1, 17; Ex. D at 1, 17; Ex. E.

A petitioner must fully exhaust state court remedies before seeking federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A); *Loynachan v. Davis*, 766 F. App'x 156, 159 (5th Cir. 2019) ("A federal court may not grant habeas relief unless the petitioner 'has exhausted the remedies available in the courts of the State.'" (quoting 28 U.S.C. § 2254(b)(1)(A)). This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *See*

*Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir. 1989).[5]

Texas prisoners must present their claims to the CCA in a petition for discretionary review ("PDR") or an application for state post-conviction relief. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986). "A petitioner need merely press a claim through one of these avenues to exhaust that claim. [But, t]o exhaust a claim, it must also be presented in a procedural context in which state courts necessarily review the claim on the merits." *Loynachan*, 766 F. App'x at 159 (citations omitted).

As to the Collin County convictions, because Thomas failed to exhaust state court remedies in a procedurally correct manner prior to filing a Section 2254 application, the Court should dismiss these claims without prejudice. *See, e.g., Sam v. Louisiana*, 409 F. App'x 758, 763 (5th Cir. 2011) (per curiam) ("A federal district court may not adjudicate a habeas petition unless all claims in the petition are exhausted." (citing *Rhines v. Weber*, 544 U.S. 269, 274 (2005))).

### Recommendation

The Court should dismiss Petitioner William Howard Thomas's consolidated applications for a writ of habeas corpus under 28 U.S.C. § 2254 with prejudice as to his Dallas County conviction (because that challenge is time barred) and without

---

[5] *See also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) ("The exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition. The exhaustion doctrine is based on comity between state and federal courts, respect for the integrity of state court procedures, and 'a desire to protect the state courts' role in the enforcement of federal law.'" (quoting *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (quoting, in turn, *Rose v. Lundy*, 455 U.S. 509, 518 (1982)))).

prejudice as to his Collin County convictions (because state court remedies as to those challenges were not fully exhausted in a procedurally correct manner prior to filing a federal habeas application).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 9, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE